COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


JARVIS CORNELIUS MURRELL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1181-21-1                      JUDGE RANDOLPH A. BEALES
                                                    SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                         Rufus A. Banks, Jr., Judge

          (Heather Buyrn Crook; Buyrn & Crook, Attorneys, on brief), for
          appellant.  Appellant submitting on brief.

          Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


       Jarvis C. Murrell appeals an order of the Circuit Court of the City of Chesapeake convicting

him of felony driving while intoxicated, subsequent offense, felony driving on a revoked license,

alcohol related, refusal of a breath test, subsequent offense, and possession of cocaine with the

intent to distribute.  On appeal, Murrell contends that the evidence was insufficient to sustain these

convictions.

                                      I.  BACKGROUND

       At 4:45 a.m., on September 20, 2020, a McDonald's employee noticed a car stopped "in the

middle of the intersection" with its headlights on and left turn signal blinking.  The car was still

there around 6:20 a.m., so the employee decided to check on the driver.  The employee testified that

he saw a man, later identified as Murrell, alone inside the car, sleeping in the driver's seat.  Once the

employee roused Murrell, he told Murrell to pull into the McDonald's parking lot.  The employee

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

watched Murrell drive into the McDonald's parking lot, and he thought that it "[l]ooked like he [Murrell] was just too intoxicated." The employee testified that Murrell struggled to put the car in drive, almost hit a trash can, and "was swerving a little bit." Murrell then parked his car "across the lines" between the marked parking spaces. Approximately ten minutes later, the employee noticed that Murrell's car had moved thirty-five to forty yards across the parking lot and had ended up on the curb, almost hitting the entrance sign.

Officer Shannon Velez of the Chesapeake Police Department testified that, when she arrived at the McDonald's at 6:42 a.m., she saw Murrell's car near the exit—with the right front tire up on the curb and with the driver's side door open. She found Murrell asleep at the wheel with the car still in drive. When she tried to awaken Murrell, she noticed that he seemed very disoriented, that he slurred his speech, that he had bloodshot eyes, and that he smelled strongly of alcohol. She then asked him if he had consumed any alcohol, and he responded that he had taken "one shot earlier" around 1:00 a.m.

Officer Velez asked Murrell to exit the car. She testified that, when he exited the car, he "seemed to be swaying as he walked" and "lean[ed] against his vehicle to maintain balance." When Murrell performed a horizontal gaze nystagmus ("HGN") test, Officer Velez observed indications that Murrell was "on CNS depressants or alcohol." She then asked Murrell to perform a walk-and-turn test, but he twice stumbled out of the instruction position for the test.

While Officer Velez conducted the field sobriety tests, two other officers searched Murrell's rental car after "observ[ing] a small plastic baggie containing a powdery substance, suspected narcotics, in the driver's seat." The bag on the driver's seat contained "four tied up packaged corner baggies," each containing cocaine. In the center console, they found three clear plastic bags containing even more cocaine, more than twenty unused plastic bags, a digital scale, and two credit

cards bearing Murrell's name.  Finally, they found a second digital scale with cocaine residue on the passenger's seat.

At 7:03 a.m., Officer Velez arrested Murrell for driving while intoxicated.  At the time, Murrell's driver license had been revoked.  Officer Velez searched Murrell and found $366 in cash in his pocket.  She then transported Murrell to jail, where he refused to take a breath test.  Following his first refusal, Officer Velez read him the "Declaration and Acknowledgement of Refusal" form and offered him the test again.  Murrell again refused to take a breath test.

At trial, Detective Terra Cooley of the Chesapeake Police Department testified "as an expert in the packaging and distribution of narcotics, including cocaine."  She testified that the amount of cocaine (approximately eleven grams) in multiple bags, the presence of two digital scales and multiple unused plastic bags in the vehicle, and the lack of any ingestion devices in the vehicle were inconsistent with just personal use of the cocaine.  She testified that "the average [cocaine] user uses half a gram a day."  She also testified that it was significant that one of the scales had drug residue on it, because "users aren't going to be putting the product on the scale.  They're not going to want to lose any product."  Finally, she noted that it was common for narcotics distributors to use rental vehicles because it makes it harder to detect their location.

The trial court convicted Murrell of (1) felony driving while intoxicated, subsequent offense, (2) felony driving on a revoked license, alcohol related, (3) refusal of a breath test, subsequent offense, and (4) possession of cocaine with intent to distribute.  Murrell now appeals to this Court.

## II.  ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*,

443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

### A. Assignments of Error I & IV: Driving While Intoxicated, Subsequent Offense, and Driving on a Revoked License, Alcohol Related

In his first assignment of error, Murrell argues that the trial court erred in finding that he was "driving under the influence of an intoxicant which impaired his ability to drive." In his fourth assignment of error, he contends that "[t]he Trial Court erred in convicting Appellant Murrell, as the Commonwealth failed to prove the elements of Drive While DUI Revoked, in violation of Virginia Code 46.2-391 (d) (2), as it failed to prove the elements of DUI."

Code § 18.2-266(ii) prohibits any person from driving a motor vehicle "while such person is under the influence of alcohol[.]" The requirements of proving that a defendant was under the influence of alcohol are met where the evidence shows the defendant was intoxicated. *Leake v. Commonwealth*, 27 Va. App. 101, 111 (1998). "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." *Id.* at 110 (quoting Code § 4.1-100).

In this case, Murrell was found asleep twice behind the wheel of a running vehicle—once in the middle of an intersection and once with his vehicle's right front tire perched up on the curb in the McDonald's parking lot. The McDonald's employee testified that, based on Murrell's

driving behavior as Murrell drove into the McDonald's parking lot, it "[l]ooked like he was just too intoxicated." Officer Velez testified that Murrell smelled strongly of alcohol, seemed disoriented, slurred his speech, had bloodshot eyes, and struggled to maintain his balance on multiple occasions. While performing the HGN test, Officer Velez observed clear indications that he was either "on CNS depressants or alcohol." Furthermore, the record shows that Murrell's driver's license was actually revoked at the time of this offense. For all of these reasons, we certainly cannot say that no rational factfinder could have found that Murrell had driven his car while intoxicated. Therefore, the trial court did not err in convicting Murrell of felony driving while intoxicated, subsequent offense and felony driving on a revoked license, alcohol related.

### B.  Assignment of Error II: Refusal of a Breath Test, Subsequent Offense

In Murrell's second assignment of error, he contends that the trial court erred in convicting him of refusing a breath test because the Commonwealth "failed to prove that the Appellant [Murrell] unreasonably refused" to consent to the breath test. In support of this assignment of error, he argues that the trial court's only basis for Murrell's conviction was Officer Velez's "claim that the Appellant was driving drunk in the first place." However, Murrell's subjective belief that Officer Velez lacked any basis to arrest him does not render his refusal reasonable. *See Cash v. Commonwealth*, 251 Va. 46, 50 (1996) ("[A] driver's subjective belief that he was not under the influence of alcohol is not a reasonable basis for refusing the test . . . ."). Officer Velez arrested Murrell for driving while intoxicated within an hour after he drove from the intersection into the McDonald's parking lot. When they later arrived at the police station, Murrell *twice* refused to take a breath test—including once after Officer Velez had read him the declaration and acknowledgment of refusal form. Given the lack of any reasonable explanation from Murrell for his refusal of the breath test, we certainly cannot say that no rational factfinder could conclude that Murrell

unreasonably refused to submit to a breath test. Therefore, we affirm Murrell's conviction for misdemeanor refusal to submit to a breath test.

### C. Assignment of Error III: Possession of Cocaine with Intent to Distribute

In Murrell's third assignment of error, he contends that "the Commonwealth failed to prove the elements of PWID [possession with intent to distribute]" cocaine. In support of this assignment of error, Murrell argues that "mere proximity [to cocaine] in a rented vehicle" does not prove he possessed the cocaine. Furthermore, he argues that without "evidence of typical drug distribution criteria," the evidence is insufficient to prove that he intended to distribute the cocaine.

"Possession may be actual or constructive." *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (*en banc*) (citing *Clodfelter v. Commonwealth*, 218 Va. 619, 622 (1977)). "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.'" *Id.* (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). The fact that an accused owned or occupied a vehicle where controlled substances were found "is a circumstance that may be considered together with other evidence tending to prove that the owner or *occupant* exercised dominion and control over . . . the contraband." *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992) (emphasis added). Furthermore, intent to distribute drugs may "be shown by circumstantial evidence." *Welshman v. Commonwealth*, 28 Va. App. 20, 37 (1998) (*en banc*). "Such evidence may include the quantity of drugs and cash possessed and whether appellant used drugs. Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute." *Id.*

In this case, the record shows that Murrell was the sole occupant of a vehicle with cocaine and drug distribution paraphernalia. The officers conducting the search found "four tied up packaged corner baggies" containing cocaine on the driver's seat, three clear plastic bags containing cocaine next to two credit cards bearing Murrell's name in the vehicle's center console, and more than twenty empty plastic bags for packaging the cocaine. They also found two digital scales, one in the center console with Murrell's credit cards and one on the passenger's seat. The scale in plain view on the passenger's seat even had cocaine residue on it. The officers did not find any drug ingestion devices in the car, and Detective Cooley testified that the amount of cocaine found in Murrell's possession exceeded the amount that a typical user would have for personal use. Thus, the amount of cocaine found in the vehicle is indicative of an intent to distribute that cocaine. *See Williams v. Commonwealth*, 42 Va. App. 723, 736-37 (2004). Therefore, given the sheer number of items that are frequently used in the distribution of drugs that were found in the vehicle and given the significant amount of cocaine (greater than what would be possessed simply for personal use) that was found in the vehicle, we certainly cannot say that no rational factfinder could have found that Murrell possessed the cocaine with the intent to distribute it. Consequently, we affirm Murrell's conviction for possession of cocaine with intent to distribute.

### III. CONCLUSION

For all of these reasons, we affirm the trial court's convictions of Murrell.

*Affirmed*.